## GAGE et al. v. DOWNEY· et al.*

## No. 12,377; ·August 20, 1888.

### 19 Pac. 113.

**Judgment — Res Adjudicata.—Plaintiff Alleged, in an Action** against her husband's administrator for certain land, that her husband, who owned no property, acquired title to the land in question under a mortgage which he took to secure a loan of her money. It appeared that he acquired title to part of the land under the mortgage, and to the remainder by deed. Held, that a decree in plaintiff's favor for the entire tract is conclusive of her right thereto as against her husband's estate.

**Judge—Disqualification—Removal of Cause—Validity of Judgment.**—Where a case is transferred, because of the disqualification of the judge, to an adjoining judicial district, such court acquires jurisdiction, the judge having had authority under the statute to make the transfer, though the county was not the nearest one to which the case might have been transferred; and its judgment cannot be collaterally attacked.

**Ejectment—Defenses—Agreement to Convey Part of Land to Attorney.**—An°agreement by plaintiff to transfer part of the land sued for, when recovered, to his attorneys, for their services, is not a defense to such action, even if within the prohibition of the statute forbidding attorneys to buy any thing in action.

**Appeal—Objections not Raised Below.**—Where it is not objected, at the time a motion for a new trial was passed on, that notice of motion was not given, it will be presumed on appeal that the notice was given.

APPEAL from Superior Court, San Diego County; W. T. McNealy, Judge.

Action by Henry T. Gage and Cornelia Rains de Foley against John G. Downey and the Merchants' Exchange Bank

---

*For subsequent opinion in bank, see 79 Cal. 140, 21 Pac. 855.

of San Francisco to recover certain land. There was a judgment for defendants, and plaintiffs appeal. The contract between plaintiffs and Glassell, Smith & Patton, referred to in the opinion, was that plaintiffs should convey a portion of the lands sued for, when recovered, to said Glassell, Smith & Patton for their services as attorneys in the action. Penal Code, section 161, forbids any attorney to buy or be interested in buying any evidence of debt or thing in action.

Glassell, Smith & Patton and Henry T. Gage for appellants; Levi Chase, Bicknell & White and O'Brien & Morrisson for respondents.

THORNTON, J.—We see no ground to dismiss the appeals herein or either of them. Admitting that the notice of intention to move for a new trial is no part of the record, because not made such by bill of exceptions or statement, still it is evidence that the motion was submitted and denied by the court, at which time the respondents (defendants in the court below) were represented by their attorney, Levi Chase, Esq. This is shown by the order denying the motion for a new trial, entered in the minutes of the court on the 29th of August, 1887, which is as follows: "The defendants being present by L. Chase, Esq., their attorney, the plaintiff's motion for a new trial being now submitted is at this time denied by the court." The record shows no objection to the submission of this motion on the ground that no notice so to move was served and filed in time. Under these circumstances, it would be manifestly unjust to hold that the court below did not acquire jurisdiction of the motion, or to dismiss the appeal from the order denying the motion for a new trial. Every intendment sustains the action of the court. The failure to object, and the action of the court in passing on the motion and not dismissing it, afford an irresistible presumption that all things were regularly done; that the proper notice of intention had been given, and the statement regularly prepared. It follows from the foregoing that the motion to dismiss either appeal must be denied.

The plaintiffs in this cause are Henry T. Gage and Cornelia Rains de Foley, and the defendants are John G. Downey and the Merchants' Exchange Bank of San Francisco. The

action is ejectment to recover possession of an undivided one-half of a tract of land situate in San Diego county, known as the "Rancho Valle de San Jose," for which a patent was issued by the United States on the 10th of January, 1880, to Sylvestre de la Portilla, and also an undivided twelve twenty-fifths of a tract of land situate in the same county, known as the "Rancho Valle de San Jose," for which a patent was, on January 16, 1880, issued by the United States to J. J. Warner. Judgment was rendered for the defendants. The plaintiffs moved for a new trial, which was denied. The latter prosecute the appeals herein from the judgment and order denying a new trial.

On the 16th of April, 1836, a grant was made to Sylvestre de la Portilla by N. Guiterrez, political chief, of the place called "Valle de San Jose," containing four square leagues. On the eighth day of June, 1840, a grant was made to Jose Antonio Pico by Juan B. Alvarado, governor of California, of the place called "Agua Caliente," to the extent mentioned in the plan accompanying the expediente. On the twenty-eighth day of November, 1841, a grant was made to J. J. Warner by Manuel Micheltorena, governor of California, of the place called "Valle de San Jose," containing six square leagues, more or less. The grants to Portilla and Warner were confirmed, and patents were issued to them severally, as above set forth. The grant to Pico was rejected. On the 6th of November, 1858, Portilla conveyed all his interest in the rancho to one Vicente S. de Carillo. Some time prior to 1856, say in 1854, J. J. Warner mortgaged his rancho Valley of San Jose to J. Mora Moss. Suit was brought to foreclose this mortgage in the district court for San Diego county. In this action a homestead was set apart by the court to Warner and wife. This homestead tract is described in the decree, and is a portion of the southwestern part of the ranch, a tract said to be a league, and was directed to be sold under this decree to satisfy Moss' mortgage. This latter tract is described in the decree. It does not appear that the league was ever sold. This decree seems to have been entered in 1856. Surely, in the absence of proof, it may be conclusively presumed that Moss' debt was paid to Warner, and that this league was never sold. The homestead set apart included the whole of Warner's ranch except the league above mentioned. This is manifest

from the report of the commissioners who set apart the homestead, and the order of the court confirming it. Surely, if the homestead did not include the whole ranch except the Moss league, the part ordered to be sold would have exceeded one league. On the 20th of November, 1858, the above-named Warner and his wife, Anita Warner, executed a mortgage to John Rains of all their interest in the land granted to him. The description of the land included in this mortgage is as follows: "All the right, title, and interest of the parties of the first part of, in, and to that certain tract of land lying, being, and situate in the county of San Diego, Cal., known as the 'Valley of San Jose and Agua Caliente,' and being the lands granted to Jose Antonio Pico by Juan B. Alvarado, governor of the department of the Californias, by deed of grant of date of June 8, 1840, and to Juan J. Warner by Manuel Micheltorena, governor as aforesaid, by deed of grant of date of November 28, 1844, reference being had for a more particular description to the several grants, expedientes, maps, and other papers on file in the office of the surveyor general of the United States for California, in the city of San Francisco, and in the office of the clerk of the district court of the United States for the Southern district of California, in the city of Los Angeles, forming the record of case No. 254 on the docket of the United States land commission, and of case No. 218 on the land docket of said district court; together with all and singular the tenements, hereditaments, and appurtenances thereunto belonging or in any wise appertaining." On the 5th of July, 1861, the above-named Carillo conveyed to John Rains the undivided one-half of the (Portilla) rancho, previously conveyed to him by Portilla. The mortgage of Warner and wife to Rains was subsequently foreclosed, and the mortgaged premises sold under the decree of foreclosure by George Lyons, sheriff of the county of San Diego, to Rains; and on the 18th of November, 1861, the sheriff aforesaid, in pursuance of the decree and sale to Rains, executed to him a deed of the mortgaged premises above mentioned. The description in the sheriff's deed of the property conveyed is as follows: "All the right, title, and interest of said defendants of, in, and to that certain tract of land lying and being situate in the county of San Diego, state of California, known as the 'Valle de San Jose and Agua Caliente,' and being the land

granted to Jose Antonio Pico by Juan B. Alvarado, governor of department of the Californias, by deed of grant of date January 8, 1840, and to John J. Warner by Manuel Micheltorena, governor as aforesaid, by deed of grant of date November 28, 1844; reference being had for a more particular description to the several grants, expedientes, maps, and other papers on file in the office of the surveyor general of the United States for California, in the city of San Francisco, and in the office of the clerk of the district court of the United States for the Southern district of California, in the city of Los Angeles, forming the record of case No. 254 on the docket of the late United States land commission, and of case No. 218 on the land docket of said district court; together with all and singular the tenements, hereditaments, and appurtenances thereunto belonging. . . . .'' The mortgage of Warner and wife to Rains included the whole ranch granted to Warner; and Rains, under the decree of foreclosure, acquired title to the whole of it, and of this we have no doubt. The decree directs the whole to be sold and conveyed by the sheriff. The description in the mortgage and sheriff's deed are given above. The Moss league also passed to him under this mortgage, decree, and deed. At the time of the making of the foregoing documents, the Moss league had not been sold, and Rains took the title to Warner's ranch, presumably encumbered as to this league. As this was paid off he took title to the whole of Warner's ranch. By the deed from Carillo and wife he was invested with the title to the undivided one-half of the Portilla ranch, and the legal title to Warner's ranch and the above one-half of the Portilla grant was in him when he died, in November, 1862. These interests descended to his wife and children, unless the latter were devested of them by proceedings which will be hereafter referred to.

Before Rains took the mortgage above mentioned from Warner and wife, he had, on the 16th of September, 1856, intermarried with Maria Merced de Williams. He died on the 17th of November, 1862, leaving surviving him his wife above named, and five children, named Cornelia (who is one of the plaintiffs), Isaac, Robert, John, and Francisca, the latter born after the death of her father. Isaac died in 1877 intestate, unmarried, and without issue. On the 21st of February, 1863, Maria Merced, the above-named widow of John Rains, com-

menced an action in the district court of the county of San
Bernardino against E. K. Dunlap, administrator of John
Rains, deceased, and her children above named and others, in
which she set forth her marriage with John Rains on the 16th
of September, 1856; that Rains then had but an inconsider
able amount of property, which he afterward expended; that
Rains acquired money by the sale of her separate property;
that on the 29th of November, 1858, he lent to J. J. Warner
the sum of $1800, to secure the payment of which he re-
ceived from Warner and his wife a mortgage of certain
property, describing it as follows: ''All their right, title,
and interest in and to that certain tract of land lying and
being situate in the county of San Diego, Cal., known as
the 'Valle de San Jose and Agua Caliente,' and being the
lands granted to Jose Antonio Pico by Juan B. Alvarado,
governor of the department of the Californias, by deed of
grant of June 8, 1840, and to John J. Warner by Manuel
Micheltorena, governor as aforesaid, by deed of grant of date
November 28, 1844''; the property and right included in said
mortgage being all that part of said rancho ''Valle de San
Jose and Agua Caliente,'' lying to the north and east of the
east and west and north and south lines drawn from the tree
marked ''W,'' mentioned in the complaint, instead of the one
square league lying to the south and west of said two lines.
The line referred to marked ''W'' is described as an oak,
standing on the east and in contact with the rocks, forming
the first rocky point on the south side of the meadow valley,
which extends eastwardly from the rocky hill at San Jose In-
dian village to Buena Vista. (The above description is com-
bined from the original and amended complaint, in accordance
with what appears in the transcript.) Other property is
mentioned in the complaint which it is not necessary to de-
scribe. The complaint further avers that Rains proceeded in
due course of law to foreclose this mortgage against Warner
and the heirs of his wife, then deceased; that at the sale under
the decree of foreclosure Rains became the purchaser, and
thereafter in due time received the sheriff's deed for such
premises. It was further averred that the money lent by
Rains to Warner, and for which the mortgage was taken from
Warner and wife, was the separate property of the then
plaintiff, Maria M. Williams de Rains; that Rains paid no

money for the property purchased at the sheriff's sale above mentioned; and that the amount paid was the amount found by the court due on the mortgage foreclosed; that no part of this money had ever been given to Rains by the plaintiff, his then widow, nor did it belong to him in any way; that she was informed by Rains that the sheriff's deed for the mortgaged property aforesaid had been executed to her as grantee. She avers that the property became her separate property, and asks that the court decree the property included in the aforesaid deed of the sheriff of San Diego county to be hers, as against the defendants, with the common general prayer for all other and further relief to which she may be entitled. The district court for San Bernardino county found the facts as alleged by plaintiff in regard to this property, and decreed it to be her separate property. And it was further adjudged by same decree that defendant E. K. Dunlap, administrator of John Rains, deceased, execute and deliver to the plaintiff all necessary deeds, etc., to carry the decree into full effect. This decree was entered and filed on the 13th of March, 1863. On the next day the deed of the property described in the complaint was executed to plaintiff Maria Merced, by the administrator, as required by the decree. On the 14th of March, 1863, the above-named Maria Merced conveyed to her children, Cornelia, Isaac, Robert, John Scott, and Francisca Rains, by deed, all of the estate above mentioned, conveyed to her by deed of Dunlap, administrator, just above set forth. On the 2d of April, 1864, the aforesaid Maria Merced, widow of John Rains, commenced an action in the district court for the county of Los Angeles against Dunlap, in his individual capacity, and also as administrator of John Rains, deceased, Robert S. Carlisle, individually and as trustee, Cornelia Rains, Isaac Rains, Robert Rains, John Scott Rains, Francisca V. Rains, and others as defendants. On the twenty-sixth day of November, 1864, on the affidavit of plaintiff's attorney that the judge of the district court for the first judicial district, of which the county of Los Angeles formed a part, was disqualified from acting in the case by reason of consanguinity, on motion of said attorney the cause was removed for trial to the district court of the third judicial district for Santa Clara county. No objection was made to this order. The papers in the cause were thereafter transmitted to the district court

for the county last named, and filed therein on the fourth day of January, 1865. No motion was made to remand this cause to the district court for Los Angeles county, and it remained for trial, and was tried in the court to which it had been by the order transferred. On the 9th of May, 1865, an amended complaint was filed by the plaintiff, who had, since the commencement of the action, intermarried with Jose C. Carillo. The object of this suit was to have set aside the conveyance to her children as having been procured from her by fraud and undue influence, and also to set aside a power of attorney, executed to Robert S. Carlisle, which she had revoked, and for an account from Carlisle, etc., and for general relief. The property averred to have been conveyed by the deed sought to be set aside by this suit is set forth in the complaint, and is described in full. It consists—First, of the Cucamonga ranch, situate in the county of San Bernardino; second, the Bella Union Hotel, situate in the city of Los Angeles; third, a lot in the city just mentioned, which was conveyed to Rains by Alice Flashner by deed dated August 11, 1862; and, fourth (we here insert the description in same words as in complaint), "all that certain tract of land situate in the county of San Diego, state aforesaid, known as 'San Jose del Valle and Agua Caliente,' same set apart as a homestead for Jonathan J. Warner and wife, by decree of the district court of San Diego county on September 24, 1856, and known also as 'Warner's Rancho' ''; fifth, certain personal property. The above is alleged in the complaint to have been decreed to be her separate property by the decree in the San Bernardino action. Dunlap, Carlisle, and the infant children of said plaintiff, by their guardian ad litem, all answered the complaint. The case was tried, and on the twenty-seventh day of May, 1867, a decree was made and entered setting aside the deed above mentioned made by plaintiff to her children as having been obtained by fraud, and it was ordered that the same should be delivered up and canceled, also setting aside the power of attorney to Carlisle. The decree then proceeds to distribute the property in the action between the plaintiff and her children, defendants above named. Certain property is distributed to the children, and adjudged to belong to them, and certain other property to the plaintiff as hers. The respective interests are clearly

designated and described in the decree, and possession is awarded to each of the parcels so decreed to them. Among other parcels of land awarded to the plaintiff is one designated in the decree in words following: "Second. And also all that tract of land situate in the county of San Diego, state of California, and known as the 'Rancho San Jose del Valle' (or 'Warner's Ranch'), being the same rancho finally confirmed to J. J. Warner, and surveyed under instructions from the United States surveyor general of California by John C. Hayes, in July, 1859, and said survey was approved March 3, 1860, by T. W. Manderville, United States surveyor general of California." On the 3d of December, 1868, Maria Merced Williams de Carillo executed to C. V. Howard, P. Beaudry, M. F. Coronel, J. S. Downey, and J. S. Garcia, a deed of "all that certain tract of land or rancho situate in the county of San Diego, state of California, known by the name of 'San Jose del Valle,' or 'Warner Ranch,' and also known by the name of 'San Jose o Tagui,' and being the same tract of land or rancho confirmed by the United States land commission and United States district court to J. J. Warner, in the case of J. J. Warner vs. The United States, to the papers in which case reference is hereby made for a more particular description."

It is admitted that defendants succeeded to an undivided half of the Portilla grant by deed of V. S. de Carillo, executed on the 20th of February, 1869, to C. V. Howard et al., and is not involved in this suit. Of the children of Maria M. W. de Rains above mentioned, Isaac died in 1877, intestate, unmarried, and without issue. It is said by counsel for plaintiffs that the interests of Robert, John, and Francisca, who married the plaintiff Gage, if any they had, became vested before the beginning of this action in the plaintiff just above named. Defendants claim title under the decrees above set forth, rendered in the San Bernardino and Santa Clara cases, and conveyances subsequently made.

It is averred by plaintiffs that the title under the Portilla grant was not embraced in the San Bernardino case. In this contention we cannot concur. The claim preferred by Mrs. Rains in this suit was for the whole of the Warner ranch, except the Moss league, which league, in the final survey, was not awarded to Warner. The reference to the grant to War-

ner and the homestead set off to him in the action of Moss v.
Warner and wife was mere matter of description, to identify
the land which she claimed.   There was no intention to do
what is most unusual and entirely unnecessary to deraign and
set forth her chain of title in the complaint.   The complaint
means that John Rains bought this land with money which
was part of plaintiff's separate estate; that it belonged to her
in fee, and should be conveyed to her.   It states that the
property included in the mortgage to John Rains is a certain
part, viz., that set off as a homestead in the action of Moss v.
Warner.   That is the tract claimed by her in the action and
so declared in the complaint.   The word "right," connected
with "property," in the complaint, does not give a different
meaning to what is claimed by the complaint.   The language
used amounts to stating that the right involved and claimed
here is the right to the tract set apart as a homestead, de-
scribed in the pleading.   The decree of the court, and the deed
of Dunlap, administrator, accord with this view, as will be
seen by the reference to them.   The complaint intended to
challenge John Rain's right and title to this land, and to
bring them to judicature, and this we think was done by the
pleader.   So that the parties claiming under Rains might
deny by their answer her right to the land, and offer in evi-
dence any title, whether derived from Portilla or anyone else,
to the land, which would show the land to be a part of his
estate.   The title to the land was in controversy in this suit
as between the personal representative and the children of
John Rains on the one hand, and his widow on the other, and
it was determined in favor of the widow (plaintiff).   John
Rains acquired his interest in the Portilla grant after his
foreclosure at the sheriff's sale under the decree of foreclosure
in the action to foreclose his mortgage taken from Warner
and wife; and if, after Mrs. Rains obtained the deed of the
administrator under the decree in the San Bernardino case,
she had brought an action against John Rains to recover the
land embraced in the decree, and he had set up against her his
Portilla title, she might have defeated it, if not by the decree
just above mentioned, by showing that the Portilla interest
was acquired by him with money belonging to her as her sepa-
rate estate; and we are of opinion that the defendants could,
in this action, do the same against the plaintiffs to defeat their

right to any portion of the land included in the Warner patent. In our judgment the decree under consideration conclusively determined that the land embraced in it belonged to Mrs. Rains, and that the estate of Rains had no title to it acquired from any source, whether Portilla, or Pico, or anyone else. Under this decree in Mrs. Rains' favor, she executed the deed to her children, under which plaintiffs herein claim.

It is contended on their part that the judgment in the case tried in Santa Clara, setting aside this deed, is void for want of jurisdiction in the district court of Santa Clara county. This contention we propose now to consider. The objection made to the jurisdiction of the court is put on the ground that the judge had transferred the cause to the district court of a county—Santa Clara—which court was not the nearest court to Los Angeles county, where the like cause or objection for making the order did not exist. The same cause and objection here existed as to every county in the first judicial district; therefore it would have been error to transfer it to a court in a county in that district. The judge then had to select a court of a county not of the first district. The nearest district courts then were in the third judicial district, at that time composed of the counties of Monterey, Santa Cruz, Santa Clara, and Alameda. Conceding that the county seats of Monterey and Santa Cruz were nearer to Los Angeles county in a straight course than that of Santa Clara county, still, as the county seat of the latter was nearer by the usually traveled route, or more accessible, might it not be reasonably concluded that the district court of Santa Clara was the nearest? But waiving this, we are of opinion that, conceding that the county seat of Monterey or Santa Cruz was nearer than that of Santa Clara to Los Angeles county, that the order sending it to the district court of the latter county was only error. We cannot see how it can be law that a judgment can be impeached collaterally and held void, because a judge has made an inconsiderable mistake in computing distances, or had selected a county seat more readily accessible than the others in coming from Los Angeles, and holding it to be really the nearer on that account. The judge had jurisdiction to make this order, under the statute then in force. He must determine what is the nearest court in administering the law. This

2

determination was undoubtedly within his power (Stats. May 6, 1854; Stats. 1864, p. 153; Hitt. Gen. Laws, par. 5600); and if he sent it to a county some distance farther than another by error of a miscalculation of distances, it would be nothing more than an error, and should not render the judgment void. Conceding that this judgment might have been reversed on appeal, still it would not be void on collateral attack. The cases cited by the counsel for plaintiffs (appellants here)—Burton v. Covarruhias, decided at the April term, 1865 (not reported); People v. De la Guerra, 24 Cal. 73; Livermore v. Brundage, 64 Cal. 299, 30 Pac. 848; and People v. McGarvey, 56 Cal. 327—are not at all in point. They are all on appeal or direct attack. No collateral attack was attempted in either case, and in every case except People v. McGarvey they were orders not of transfer, but orders in the cause, involving judicial action of different kind than that of transfer, which the judge was expressly forbidden by statute from making. People v. McGarvey related to a criminal case transferred under a state of facts not allowed by the statute relating to such cases—a statute entirely different from the act under which the judge proceeded in this case, as is apparent from the opinion in the case. There was no appeal in the Santa Clara case. In fact, the adverse parties therein did not object to the order, did not move to vacate it, nor to remand the cause in the Santa Clara court, but acquiesced in the judgment. We do not think the contention of the appellants is sustainable. The judgment is not open to attack for the reason urged by them.

The plaintiff in the case tried in Santa Clara county relied on the judgment recovered in the San Bernardino case, which, as we have seen, determined that the whole of the Warner ranch, except the Moss league, was hers, as against any title derived from any source or anyone else, and the decree in the Santa Clara case set aside the deed to her children and determined certain land to belong in fee to the plaintiff therein, Mrs. Carillo, formerly Rains. It makes no difference that the decree assumed the form of a partition of the property involved in the cause between the plaintiff and her children. It set aside the deed to the children, and, conceding that the decree in other respects was void, it was not void so far as it set aside this deed. The Warner ranch, except the Moss

league, then remained in her under the San Bernardino decree, and the administrator's deed made in pursuance thereof. We do not think that it is averred in the complaint in the Santa Clara cause that the judgment in the San Bernardino cause was obtained and entered by collusion of any kind. The arrangement between Scott and Dunlap had relation to the deed executed after the judgment in the San Bernardino case to Mrs. Rains' children and the power of attorney to Carlisle, and not to the judgment. The findings in the Santa Clara case, if there were any, are not in the transcript, and the judgment therein makes no reference to any agreement between Scott and Dunlap. The point that this was averred to have been a collusive judgment is not well taken. The defendants acquired, before the commencement of the action, the title to an undivided one-half of the land patented to Portilla. This does not include the half conveyed to John Rains by Carillo and wife, by deed dated July 5, 1861. The above appears by stipulation. It was admitted on the trial that there is a league (the Moss league) of the land patented to Portilla which is not included in the patent to Warner. All the other land included in the patent to Portilla is included in the patent to Warner. As to the land included in the Warner patent, the defendants are entitled to recover it. This follows from what has been stated above.

The question as to that part of the land sued for outside of the patent to Warner, and embraced in the Portilla patent, demands further consideration. The Moss league, it is admitted by stipulation, is not included in the patent to Warner. Such is the meaning of the stipulation on page 362 of the transcript. We do not know that the defendants ever acquired more than the above half of the league. The other half passed to John Rains, and he died intestate as to it. This half was acquired during the coverture with his wife, Maria Merced, and was, therefore, community property, and on his death passed, subject to the payment of debts of the community, one-half to Maria M., his relict, and the other half to his descendants (children) : See act of May 8, 1861 (Stats. 1861, p. 310). Rains left four children, one of whom, Isaac, died in 1877, intestate, unmarried, and without issue. His portion, an undivided one-fifth, descended to his mother, Maria Merced. The other four-fifths descended to the other

children. The title to one-fifth of this half, or one-twentieth, of the Moss league, was in Mrs. Foley when the action was brought, and she is entitled to recover it. Isaac's interest in this land passed by descent to Mrs. Rains or Carillo on his dying intestate in 1877, unmarried and without issue. The portions of Robert, John, and Victoria of this league remained in them when the action was commenced. The record does not show that they were ever conveyed to the plaintiffs, or either of them. Nor does it show that Mrs. Carillo ever conveyed her interest in this league to the plaintiff Foley or Gage. We have searched the record with the greatest care, and can find in it no deed to plaintiff Gage from anyone, and the only deed to the plaintiff Foley is that executed by her mother (Mrs. Rains) to her children on the 14th of March, 1863, which was set aside. As the record shows no conveyance of any kind to plaintiff Gage, it is free from error as to him. We have said nothing as to the interest which appears to have been acquired by Mrs. Rains or Carillo from Mrs. Carlisle by the deed of the latter. So far as it affects the land in the Warner patent, it inured, under the Howard deed, to the benefit of the defendants. As to any interest in the Portilla, it still remains in her, and can cut no figure in this suit, as she is not a party seeking any relief.

Conceding that the contracts between Glassell, Smith & Patton and the plaintiffs (which are found by the court) are void, they are of no material significance in this action. If they were void, they cannot and have no effect on the title of plaintiffs. The plaintiffs may set them up against Glassell, Smith & Patton, if they should so elect, when the former make any claim against them. We cannot see that defendant's rights are in any way enlarged by these contracts. If such contracts are void, they are no more than so much blank paper between the parties. They take away nothing from the plaintiffs, and add nothing to the rights of defendants. The contention of defendants on this point need not be further considered. It is dismissed from further notice as untenable.

As this action is brought to recover lands embraced in the Portilla and Warner patents, and as it clearly appears that the plaintiff, Mrs. Foley, is entitled to recover a portion of the lands embraced in the Portilla patent, viz., one-twentieth of the Moss league, and of any portion of the Portilla patent

not included in the Warner patent, as to her there must be a new trial. The order denying a new trial to plaintiff Gage is without error. The judgment and order are reversed as to plaintiff Foley, and the cause remanded for a new trial as to her. As to the plaintiff Gage, the judgment and order must be affirmed. So ordered.

We concur: Searls, C. J.; Paterson, J.; Sharpstein, J.; McKinstry, J.; McFarland, J.